MARIO J. LOBO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lobo v. Commissioner
Docket No. 6822-86.
United States Tax Court
T.C. Memo 1988-28; 1988 Tax Ct. Memo LEXIS 28; 54 T.C.M. (CCH) 1598; T.C.M. (RIA) 88028; January 25, 1988. Alan J. Garfunkel and Marc S. Orlofsky, for the petitioner. John J. Ferrante, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax: Year
Deficiency
1981
15,162.00
1982
794.00
After concessions by the parties, the sole issue for decision is whether, in 1981, petitioner's yacht qualified for the investment tax credit. The facts have been fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Litchfield, Connecticut, at the time that he filed his petition herein. He filed his 1981 and 1982 Federal income tax returns using the cash receipts and disbursements method with the Andover *30 Service Center, Andover, Massachusetts. On June 3, 1981, petitioner purchased a sailing yacht named Dona Sol from Stevens Yachts of Annapolis, Inc. (Stevens). Petitioner retained Stevens as his agent for the purpose of managing and chartering Dona Sol to third parties. Dona Sol was delivered to St. Maarten and placed into chartering service exclusively in foreign commerce and predominantly outside the United States during 1981 and 1982. On June 16, 1981, an application for the measurement of the vessel by the United States Coast Guard (Form CGD7-2632) was filed on behalf of petitioner by Yacht Documentations, Inc. On July 1, 198, the Coast Guard issued a Certificate of Admeasurement (Form CG-1414) describing the shape and setting forth the measurements of the vessel. On August 21, 1981, petitioner filed with the United States Coast Guard an Application of Owner for and Notice of Award of Official Number and Signal Letters (Form CG-1320). On the same day, he also filed: (1) a Designation of Home Port of Vessel (Form CG-1319), on which he designated Bridgeport, Connecticut, as the home port of Dona Sol; (2) the Oaths on Registry, License, or Enrollment and License *31 of Vessel (Form CG-1258), on which he swore "that the vessel * * * is wholly the property of [a] citizen of the United States;" (3) a Master's Oath on Registry, License, or Enrollment and License (reverse of the Form CG-1258), on which he stated that the vessel was to employed in foreign trade; and (4) a Declaration of Vendee, Transferee, or Mortgagee when an Individual (Form MA-4558). In addition, a Master Carpenter's Certificate (Form CG-1261), dated December 4, 1980, was filed with the Coast Guard. On February 9, 1982, the Coast Guard advised Yacht Documentation, Inc., that an official number had been awarded to Dona Sol. In the memorandum transmitting the number, the Coast Guard requested that petitioner submit a certificate of marking for Dona Sol and indicated that it would then "issue the marine document." On July 15, 1982, petitioner filed a certificate of marking, stating that the official number was carved on Dona Sol's main beam and that the vessel's name and home port were painted on its stern. On August 16, 1982, the Coast Guard issued a Certificate of Documentation (Form CG-1270) for Dona Sol. The Certificate of Documentation stated that Dona Sol *32 was documented for Registry. Section 38 [1] allows an investment tax credit for investments in section 38 property. Section 38 property is defined in section 48(a) and generally includes all depreciable tangible personal property. Section 48(a)(2)(A) provides, however, that "Except as provided in subparagraph (B), the term 'section 38 property' does not include property which is used predominantly outside the United States." Among the exceptions is "any vessel documented under the laws of the United States which is operated in the foreign or domestic commerce of the United States * * *." Section 48(a)(2)(B)(iii). Respondent's regulations provide: "A vessel is documented under the laws of the United States if it is registered, enrolled, or licensed under the laws of the United States by the Commandant, United States Coast Guard." Section 1.48-1(g)(2)(iii), Income Tax Regs.
At the outset, we note that, if Dona Sol is held to have been documented under the laws of the United States in 1981, it will be deemed to have been operated in the foreign *33 commerce of the United States. See section 1.48-1(g)(2)(iii), Income Tax Regs. ("Vessels operated in the foreign * * * commerce of the United States include those documented for use in foreign trade."). See also Rev. Rul. 69-509, 1969-2 C.B. 3. "Registry," the type of documentation Dona Sol received, is required for foreign trade. [2]46 U.S.C. sec. 11 (1976) (vessels "which are to engage only in trade with foreign countries" were to be registered); 46 U.S.C. 65h(b) (1982) ("A vessel for which a registry is issued may be employed in foreign trade * * *."). See also 46 C.F.R. sec. 67.07-11 (1981). The sole issue is whether, during 1981, Dona Sol was documented under the laws of the United States within the meaning of section 48(a)(2)(B)(iii). Petitioner contends that, by filing all of the necessary documents that he was able to file in 1981 and by subsequently completing the documentation process, the documentation that he received in *34 1982 should be given effect in 1981 so that he is entitled to the investment tax credit in 1981. Respondent argues that the vessel must be actually documented in the year that it is placed in service for the investment tax credit to be allowed. Ship documentation during the years at issue was governed by provisions of Title 46 of the United States Code. See 46 U.S.C. sections 11-63 (1976). [3] Under those provisions, "Vessels built within the United States and belonging wholly to citizens thereof" were entitled to registry documentation. 46 U.S.C. section 11 (1976). [4] Upon filing of certain oaths and other documents, see 46 U.S.C. sections 19, 25 (1976), and admeasurement of the vessel, 46 U.S.C. section 71 (1976), a certificate of registry was to be issued. See 46 U.S.C. Section 25 (1976) ("When the several matters hereinbefore required * * * have been complied with, the collector [5] * * * shall grant a certificate of such registry * * *.") [6]
*35 The Coast Guard regulations in effect in 1981 contained the procedural requirements that governed petitioner's application for vessel documentation. [7] First, an official number was required, which was obtained by filing an application using Form CG-1320. Documentation of Vessels, 46 C.F.R. section 67.11-1(a) (1981). This application included a designation of the ship's home port on Form CG-1319. 46 C.F.R. section 67.11-1(b) (1981). Second, the ship was to be admeasured by the Coast Guard. 46 C.F.R. 69.01-3 (1981). Third, a Builder's Certificate (Form CG-1261) and the Oaths of Owner and Master (CG-1258) were to be filed with the Coast Guard. 46 C.F.R. sections 67.09-1, 67.21-1 (1981). Finally, the net tonnage, official number, name and hailing port were to be marked on the vessel, 46 C.F.R. 67-15-1 (1981), and certification of the marking was to be filed with the Coast Guard. 46 C.F.R. section 67.15-3 (1981). [8]
*36 As our findings of fact show, long before the end of 1981, a complete application for an official number was pending -- Dona Sol had been admeasured by the Coast Guard, and the Designation of Home Port of Vessel, Master Carpenter's (Builder's) Certificate and the Oaths of Owner and Master had been filed. The documentation could not be completed until an official number was assigned to the ship. The Coast Guard did not assign the number until February 9, 1982. After this date, petitioner marked the vessel and certified that the vessel was marked. Documentation was issued on August 6, 1982. We recognize that Dona Sol was not finally documented until well after the end of 1981. We also recognize that the authority to document a vessel rested with the United States Coast Guard and that generally we should not attempt either to exercise authority held by a government agency or substitute our judgment for that of a government agency acting pursuant to its authority. See Gray v. Commissioner,16 T.C. 262, 267 (1951). See also Southern Pacific Transportation Co. v. Commissioner,75 T.C. 497, 536 n.24 (1980) and cases cited therein. However, *37 as we view the facts of this case, petitioner had, well before the end of 1981, filed every document and supplied all the information required for documentation except the certificate of marking, which he could not do until he received an official number from the Coast Guard. There is not one iota of evidence in the record, nor does respondent suggest, that such was not the case. Under these circumstances, particularly where the Coast Guard had better than 4 months to take action to enable the documentation process to be completed, and given the mandatory "shall" in 46 U.S.C. section 25, see p. 6, supra, we think that the furnishing of an official number to petitioner, so that the required marking could be made, and the issuance of the certificate of registry were ministerial acts to be performed by the Coast Guard [9] so that we are not exercising any authority of the Coast Guard in concluding that petitioner's application for documentation was sufficiently complete at the end of 1981 to meet the Internal Revenue Code's requirement that Dona Sol be documented under the laws of the United States so as to be eligible for the investment tax credit in 1981. *38 [10]
To reflect concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code as amended and in effect in the years at issue. ↩
2. Enrollment and licensing are reserved for vessels engaged in coastwise or fishing activities. See 46 C.F.R. sec. 67.07-13 (1981); 46 C.F.R. secs. 67.17-5↩ through -9 (1986). 3. These sections were repealed by the Vessel Documentation Act, Pub. L. No. 96-594, sec. 127, 94 Stat. 3453, 3459 (1980), whose effective date was June 1, 1982. Vessel Documentation Act, sec. 128, 94 Stat. at 3461. The Vessel Documentation Act was repealed by Act of Aug. 26, 1983, Pub. L. No. 98-89, sec. 4(b), 97 Stat. 500, 605 (1983), which replaced Vessel Documentation Act with substantially similar provisions. See 46 U.S.C.A. secs. 12,101-12,122 (West Supp. 1987)↩. 4. Under the Vessel Documentation Act, a vessel displacing at least five tons and owned by an individual who is a citizen of the United States was eligible for documentation. 46 U.S.C. sec. 65b (1982). See also 46 U.S.C.A. sec. 12,102 (West Supp. 1987)↩. 5. This function has been transferred to the Commandant, U.S. Coast Guard. See 46 C.F.R. sec. 66.01-3↩ (1981). 6. This provision is, in substance, substantially the same under current law. See 46 U.S.C. sec. 65e(a) (1982) ("Upon application by the owner of any vessel eligible for documentation, the Secretary shall issue a certificate of documentation of a type specified in * * * this title."); 46 U.S.C.A. sec. 12,103 (West Supp. 1987)↩. 7. These regulations were replaced in 1982 by new regulations. See Coast Guard Dec. 80-107, 47 Fed. Reg. 27,494↩ (1982). 8. Evidence of proper marking was Form CG-1322 filled out by a Coast Guard officer or employee. However, "If the vessel is at a place not readily accessible to an officer or employee of the Coast Guard, the owner or his agent shall certify as to the proper marking * * *." 46 C.F.R. sec. 67.15-3 (1981). We note that both the requirement of the official number and the requirement of marking such number were in addition to the requirements prescribed by statute. Both the numbering system and requirements of vessel marking were authorized by statute. 46 U.S.C. sec. 45 (1976)↩. 9. The ministerial nature of the remaining functions to be performed by the Coast Guard is confirmed by the limited purpose of registry, namely "to declare the nationality of a vessel engaged in trade with foreign nations, and to enable her to assert that nationality wherever found." See Anderson v. Pacific Coast Steamship Co.,225 U.S. 187, 199↩ (1912). 10. We are constrained to note that respondent has sought a "heads, I win, tails, you lose" result in this case. He has contended that lack of documentation deprives petitioner of the investment tax credit for 1981 and that the credit would not be available in 1982 because Dona Sol↩ was not placed in service in that year.